**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| P.K., <br> c/o National Immigrant Justice Center, <br> 224 S. Michigan Avenue, Suite 600 <br> Chicago, IL 60604 <br><br> *Plaintiff,* <br><br> v. <br><br> U.S. CUSTOMS AND BORDER PROTECTION, <br> 1300 Pennsylvania Avenue, NW <br> Washington, D.C. 20229; <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, <br> 2707 Martin Luther King, Jr. Avenue, SE <br> Washington, D.C. 20528; <br><br> ALEJANDRO MAYORKAS, Secretary of the U.S. Department of Homeland Security, in his official capacity, <br> 2707 Martin Luther King, Jr. Avenue, SE <br> Washington, D.C. 20528; <br><br> OFFICER BOCK, U.S. Customs and Border Protection Officer, in his official capacity, 610 South Canal Street, Room 300 <br> Chicago, IL 60607 <br><br> *Defendants.* | Case No.: _____ <br><br> **REDACTED COMPLAINT** <br><br> *Submitted Electronically* |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

JURISDICTION AND VENUE ......................................................................................... 3

THE PARTIES..................................................................................................................... 3

FACTUAL ALLEGATIONS .............................................................................................. 4

CLAIMS FOR RELIEF ...................................................................................................... 9

COUNT ONE........................................................................................................................ 9

COUNT TWO..................................................................................................................... 11

PRAYER FOR RELIEF ................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Dep't of Homeland Sec. v. Thuriassigiam*,
    140 S. Ct. 1959 (2020) (Sotomayor, J., dissenting) ................................................................10

*Edmond v. United States*,
    520 U.S. 651 (1997) .............................................................................................................1

*Lucia v. SEC*,
    138 S. Ct. 2044 (2018) .................................................................................................2, 9, 10

*Nishimura Ekiu v. United States*,
    142 U.S. 651 (1892) ...........................................................................................................10

**Statutes and Rules**

8 C.F.R. § 208.30(f) ...............................................................................................................2, 9, 11

8 C.F.R. § 208.30(g)(1)(ii) ..............................................................................................................8

8 C.F.R. § 235.3(b)(4) ...............................................................................................................8, 11

22 C.F.R. § 41.122(e)(2) ....................................................................................................2, 8, 11, 12

22 C.F.R. § 41.122(e)(3) .....................................................................................................2, 9, 12

5 U.S.C. § 704 ..................................................................................................................................3

5 U.S.C. § 706(2)(A) ...................................................................................................................3, 11

8 U.S.C. § 1101(a)(15) .....................................................................................................................7

8 U.S.C. § 1182(a)(7)(A)(i)(I) .........................................................................................................7

8 U.S.C. § 1225(b)(1)(A)(i) ........................................................................................................2, 8, 11

8 U.S.C. § 1225(b)(1)(A)(i) ..............................................................................................................8

8 U.S.C. § 1225(b)(1)(B)(ii) ...........................................................................................................11

8 U.S.C. § 1225(b)(1)(B)(iii) ...........................................................................................................8

28 U.S.C. § 1331 ..............................................................................................................................3

28 U.S.C. § 1391(e) ...................................................................................................................3

**Other Authorities**

U.S. Const. art. II, § 2, cl. 2 ...................................................................................................1

85 Fed. Reg. 15,045 (Mar. 16, 2020) .....................................................................................5

## INTRODUCTION

1.        ████████ ("P.K.") is ████████████ and aspiring graduate student in

mental health counseling.  In October 2020, P.K. completed his undergraduate studies in Austria,

earning a Bachelor's degree in Psychotherapy Science.  Thereafter, he decided to pursue the next

chapter of his studies—obtaining a Master's Degree—in the United States.  Before arriving, P.K.

had been issued a valid F-1 visa by a Consular Officer, appointed by the President and confirmed

by the Senate, at the U.S. embassy in Vienna, Austria on May 11, 2021.

2.        Less than a month later, P.K. flew to the United States, arriving at O'Hare

International Airport ("O'Hare airport") in Chicago on June 5, 2021.  P.K. came with a valid,

unexpired F-1 student visa that was properly issued by an appointed Officer.  Nevertheless, an

unappointed employee of U.S. Customs and Border Protection ("CBP") unilaterally decided to

revoke P.K.'s visa, without any valid basis or legal authority.  This unappointed employee,

exercising unreviewable discretion purported to order a binding, final revocation of P.K.'s F-1

visa.

3.        The exercise of sovereign authority by an unappointed employee violates the

Appointments Clause, one of "the significant structural safeguards of the constitutional scheme."

*Edmond v. United States*, 520 U.S. 651, 659 (1997).  To ensure public accountability for

Congress, the President, and the Officers of the executive branch, the Framers required that all

Officers be appointed by the President with the advice and consent of the Senate, or, where

Congress authorizes and the Officer is an inferior Officer, by the "Heads of Departments," the

President, or courts of law.  *Id.* at 659–60; U.S. Const. art. II, § 2, cl. 2.  As the Supreme Court

has made clear, any employee of the United States government who "exercise[s] significant

authority pursuant to the laws of the United States" and "occup[ies] a continuing position" is an

"Officer" for purposes of the Appointments Clause and thus must be properly appointed. *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018) (some internal quotation marks and citations omitted). Any significant determination and order by such officials without appointment is a nullity. *Id.* at 2055.

4.      Accordingly, the unlawful actions by an unappointed CBP employee require vacating the revocation of P.K.'s student visa.  The employee who purported to revoke P.K.'s visa was not appointed under the Appointments Clause, yet he made legal and factual determinations without review or approval by any appointed Officer and entered a final, binding revocation of P.K.'s visa.  This unlawful revocation must be declared void *ab initio*.

5.      Moreover, even if an unappointed CBP employee could constitutionally exercise the sovereign authority of revoking visas, by regulation he would only have had such authority if P.K. had been ordered removed or if P.K. was "granted permission to withdraw the application for admission." 22 C.F.R. § 41.122(e)(2), (3).  Because P.K. had a credible fear of persecution if ███████████, his removal was prohibited by statute, 8 U.S.C. § 1225(b)(1)(A)(i), federal regulations, 8 C.F.R. § 235.3(b)(4), and CBP policy, CBP Inspector's Field Manual § 17.5(d). Accordingly, CBP never purported to order P.K. removed and instead referred him for a "credible fear interview" before an asylum officer.  8 C.F.R. § 235.3(b)(4).  The asylum officer gave P.K. a positive credible fear determination and issued him a Notice to Appear.  8 C.F.R. § 208.30(f).  Moreover, although P.K. expressed willingness to withdraw his application, Defendant Bock did not grant him permission to do so.  Sections 41.122(e)(2) and (3), the only even arguable grounds for revoking his visa, therefore never applied to his case.

6.      P.K. is in further proceedings before an immigration judge related to his claim for asylum, but the visa revocation is not reviewable in those proceedings.  While his asylum

proceedings are pending—which could take years to resolve—P.K. is unable to attend his graduate studies because of the unlawful visa revocation.  P.K. thus requests that this Court hold that CBP's revocation of his student visa was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because CBP officers have never had authority under 22 C.F.R. § 41.122(e)(2) or any other provision of law to revoke P.K.'s student visa.  5 U.S.C. § 706(2)(A).

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the laws of the United States, including the Appointments Clause of the U.S. Constitution, art. II, § 2, cl. 2 and the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*.

8.      The revocation of Plaintiff's visa on or around June 5, 2021, constitutes final agency action within the meaning of 5 U.S.C. § 704.

9.      Venue is proper under 28 U.S.C. § 1391(e) because Defendants are agencies and officers of the United States, the action does not involve real property, and principal Defendants reside in this District.

## THE PARTIES

10.     Plaintiff P.K. is a ████████████████████.  On May 11, 2021, an appointed Consular Officer at the U.S. Embassy in Vienna, Austria, issued him an F-1 student visa to enroll in graduate studies in the United States.  On June 5, 2021, P.K. arrived at O'Hare airport, his first port of entry in the United States.  Upon his arrival, CBP officers placed him into secondary inspection during which Defendant Bock revoked P.K.'s student visa.

11.     Defendant U.S. Department of Homeland Security ("DHS") is a Department of the Executive Branch of the United States government, and is responsible for enforcing the immigration laws of the United States.

12.      Defendant U.S. Customs and Border Protection ("CBP") is a component of DHS headquartered in Washington, D.C., and is responsible for enforcing the immigration laws along the U.S. borders and at the ports of entry, including at Chicago O'Hare airport.

13.     Defendant Alejandro Mayorkas is sued in his official capacity as the Secretary of Homeland Security.  In that capacity, he directs each of the component agencies within DHS, including CBP.

14.     Defendant Bock is sued in his official capacity as a CBP Officer.[1]  In his official capacity, Defendant Bock purported to issue a determination that I.M. was inadmissible to the United States and an order to remove him from the United States.  Defendant Bock's first name is unknown, as the purported expedited removal order identifies him only as "BOCK, CAR28942."

**<u>FACTUAL ALLEGATIONS</u>**

15.     P.K. is a ██████████████████ who had his valid, unexpired F-1 student visa unlawfully revoked by Defendant Bock at the O'Hare airport in Chicago, Illinois, on June 5, 2021.

16.     In spring 2021, P.K. was living in Vienna, Austria and had just completed his undergraduate studies in Psychotherapy Science ████████████████.  In order to

---

[1] While Defendant Bock's formal job title is "CBP Officer," that does not denote Officer status under the Appointments Clause.  To avoid confusion, this Complaint will capitalize "Officer" when referring to persons appointed under the Appointments Clause or positions requiring appointment, and not capitalize "officer" when referring to the CBP job title.

continue his studies, P.K. applied to ███████████████ in Florida, to pursue a Master's

Degree in Clinical Mental Health Counseling.  The University admitted him to its Master's

program.

17.     After receiving the invitation to study at ███████████████, P.K. applied for

an F-1 visa.  On May 11, 2021, an appointed Consular Officer at the U.S. Embassy in Vienna

issued P.K. an F-1 student visa to enroll in graduate studies in the United States.  The visa stated

it was valid as of May 11, 2021.  P.K. went to the U.S. Embassy and met with this Consular

Officer in person to receive the visa.

18.     During this time period, the United States had in place travel restrictions for

individuals traveling from the Schengen Area of Europe (which includes Austria) due to the

COVID-19 pandemic.  Thus, the Consular Officer at the Embassy in Vienna also provided P.K.

with a letter (the "consular letter") that explained P.K. had been granted a National Interest

Exception under Presidential Proclamation 9993[2] and was permitted to enter the United States

despite the COVID-19 travel restrictions from the Schengen Area.

19.     P.K. was aware of a recent history of travel restrictions with respect to ████████

████, so he asked the Consular Officer to confirm whether there were any additional

restrictions on his entry.  The Consular Officer stated that there were no other restrictions ██

████████ traveling to the U.S. with a nonimmigrant visa.  The Consular Officer told P.K.

_____

[2] Presidential Proclamation 9993 imposed restrictions on "all aliens who were physically present within the Schengen Area during the 14-day period preceding their entry or attempted entry into the United States."  Proclamation No. 9993, 85 Fed. Reg. 15,045, 15,046 (Mar. 16, 2020).  The proclamation specifically identified Austria as part of the Schengen Area.  *Id.* at 15,045.  It also outlined several exceptions to the restriction, including "(xi) any alien whose entry would be in the national interest, as determined by the Secretary of State, the Secretary of Homeland Security, or their designees."  *Id.*

that with the consular letter and the student visa, in addition to a negative COVID-19 test, P.K. had all the documents he needed to travel to the United States to begin his program.

20.     Based on his conversation with the U.S. Consular Officer, P.K. believed that the visa permitted him to enter the United States any time after the date it was issued (and the date of its facial validity) on May 11, 2021, but that the COVID-19 travel restrictions and the consular letter required him to enter the United States within 30 days of that date.

21.     In accordance with this understanding, P.K. made arrangements and purchased a flight to the United States to depart within 30 days of the issuance of his visa.  On June 5, 2021, P.K. went to Vienna International Airport to take a flight bound for Chicago, Illinois.  At Vienna International Airport, a government official, who P.K. believed to be associated with the United States government, performed a check of P.K.'s entry documents and other travelers' documents. The official cleared P.K. to board his flight.

22.     The same day, P.K. arrived at O'Hare airport, his first port of entry in the United States before his connecting flight to Florida.

23.     When P.K. landed at O'Hare and presented the CBP official at the primary inspection kiosk with his documents, the official asked P.K. about his arrival and referred him to secondary inspection for further questioning.

24.     The official at the kiosk handed P.K.'s passport and other documents to another official who guided P.K. to the secondary inspection area.  This was the last time P.K. had access to his passport and other related identification documents.

25.     At secondary inspection, P.K. encountered Defendant Bock, a CBP officer. Based on information and belief, CBP officers such as Defendant Bock are hired by CBP's

6

Office of Human Management.  Neither the President nor the Secretary of Homeland Security,

Defendant Mayorkas, appoints CBP officers.

26.      Defendant Bock claimed P.K. was inadmissible to the United States despite

P.K.'s valid, unexpired F-1 student visa.

27.      Defendant Bock asserted that P.K. was not eligible to enter the United States until

30 days before his program at ███████████████ was to begin.  He also claimed that P.K.

was subject to COVID-19 travel restrictions and that the consular letter explaining that P.K.

qualified for a National Interest Exception was not valid.

28.      Defendant Bock asked P.K. about the purpose of his trip to the United States, to

which P.K. replied that he wanted to make sure he had time to find housing, obtain a social

security card, and begin to work on campus once his program began.  Defendant Bock then

asserted that P.K. intended to unlawfully work in the United States, despite P.K.'s explanation

that he intended only to work on campus at the University mental health clinic to fulfill the

practical hours requirement for his Master's program, as authorized under his F-1 visa.

29.      Defendant Bock charged P.K. as inadmissible under 8 U.S.C.

§ 1182(a)(7)(A)(i)(I).  This statute applies to an "immigrant," a foreign national who intends to

live and work permanently in the United States,[3] who is not in possession of a valid, unexpired,

immigrant visa, i.e., a lawful permanent resident "green card."  At the time of his arrival, P.K.

had no intention to live and work permanently in the United States; rather, he wished to pursue

his graduate studies according to the terms of his unexpired F-1 ("nonimmigrant") visa.

---

[3]  The Immigration and Nationality Act contains a broad definition of "immigrant" as "every alien except" those admitted under enumerated nonimmigrant categories, including an alien "who is a bona fide student qualified to pursue a full course of study . . . ."  8 U.S.C. § 1101(a)(15).

30.     After informing P.K. that he had revoked his student visa and that P.K. was not eligible to enter the United States, Defendant Bock asked P.K. if he wanted to withdraw his application for admission to the United States in lieu of formal expedited proceedings. P.K. initially stated that he did, but Defendant Bock did not grant P.K. permission for withdrawal. Instead, he asked P.K. if he had any fears with respect to ██████████████. P.K. replied that he feared ████████████ because █████████████████████████████████████ ████████████████████████████████████. P.K. further conveyed that his life would be endangered if he returned there.

31.     P.K.'s plan was not to seek asylum, but to complete his U.S. studies and then determine the next steps in his career. However, faced with potential ██████████████ by Defendant Bock, P.K. expressed a fear of ██████████████ if returned there due to ██ █████████████████. Defendant Bock then referred P.K. to an asylum officer for a "credible fear interview," pursuant to 8 U.S.C. § 1225(b)(1)(A)(i). Before doing so, Defendant Bock unlawfully revoked P.K.'s F-1 visa and had P.K. detained at a local jail.

32.     Federal regulations purport to authorize an immigration officer, such as Defendant Bock, to revoke a visa when an individual is "ordered . . . removed from the United States pursuant to INA 235 [8 U.S.C. § 1225]." 22 C.F.R. § 41.122(e)(2).

33.     However, under federal law and CBP policy, an individual who expresses a fear of persecution cannot be ordered removed unless and until the person has been interviewed by an asylum officer and that asylum officer has determined that the person does not have a credible fear of persecution. *See* 8 U.S.C. §§ 1225(b)(1)(A)(i), (b)(1)(B)(iii); 8 C.F.R. §§ 235.3(b)(4), 208.30(g)(1)(ii)); CBP Inspector's Field Manual § 17.15(d) (2006), *available at* https://www.aila.org/infonet/cbp-inspectors-field-manual.

34.     On or around June 22, 2021, P.K. received a positive credible fear determination from an asylum officer and was referred to an immigration judge for further proceedings. 8 C.F.R. § 208.30(f).  At no time was P.K. subject to a final removal order that would have triggered Defendant Bock or any other CBP officer's authority to revoke his F-1 visa.

35.     Federal regulations also purport to authorize an immigration officer to revoke a visa when an individual "requests and is granted permission to withdraw the application for admission." 22 C.F.R. § 41.122(e)(3).  Although P.K. expressed willingness to withdraw his application, Defendant Bock never granted P.K. permission to do so—and instead referred P.K. to an asylum officer.

36.     Due to Defendant Bock's unlawful actions, P.K. has been unable to begin his graduate studies.  P.K. now lives in Florida and until recently, was only able to support himself with the funds intended for his tuition at ███████████.  P.K.'s goals of obtaining a degree in mental health counseling in order to serve the community have been thwarted due to the unlawful actions of one unappointed federal employee.

## CLAIMS FOR RELIEF

### COUNT ONE

### (Violation of the Appointments Clause, U.S. Const. art. II, § 2, cl. 2)

37.     Plaintiff repeats and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

38.     Any employee of the United States government who "exercise[s] significant authority pursuant to the laws of the United States" and "occup[ies] a continuing position" is an "Officer" for purposes of the Appointments Clause and thus must be properly appointed. *Lucia*, 138 S. Ct. at 2051.

39.     Dating as far back as the first immigration acts, the Supreme Court has required governmental agents making final immigration determinations to be appointed as Officers. *See Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892) ("[T]he final determination of those facts may be in trusted by congress to *executive officers* . . . ." (emphasis added)); *Dep't of Homeland Sec. v. Thuriassigiam*, 140 S. Ct. 1959, 2006 (2020) (Sotomayor, J., dissenting) (summarizing *Nishimura Ekiu* as "considering whether immigration officer's appointment was unconstitutional such that his actions were invalid").

40.     Defendant Bock, an unappointed CBP employee, unilaterally decided to revoke P.K.'s F-1 visa on an erroneous factual and legal basis.

41.     Defendant Bock's determination was final, binding, and lacked any involvement or input from an appointed Officer.

42.     Visa revocations are exercises of significant authority pursuant to the laws of the United States.

43.     Defendant Bock holds a continuing position established by law.

44.     Therefore, he cannot exercise the significant authority of the United States, including the revocation of visas, without being appointed pursuant to the Appointments Clause.

45.     Neither the President nor the Secretary of Homeland Security appointed Defendant Bock pursuant to the Appointments Clause.

46.     Because P.K.'s visa was revoked by an official wielding significant authority in a continuing position who had not been appointed pursuant to the Appointments Clause, the revocation was invalid and void *ab initio*. *See Lucia*, 138 S. Ct. at 2055.

## COUNT TWO

### (Violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706(2)(A) – Arbitrary, Capricious and Not in Accordance with Law)

47.     Plaintiff repeats and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

48.     The APA provides that a "reviewing court shall—hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

49.     Defendant Bock's revocation of Plaintiff's F-1 visa was a final agency action.

50.     Federal regulations purport to authorize a CBP officer to revoke a visa when an individual is "ordered . . . removed from the United States pursuant to INA 235 [8 U.S.C. § 1225]."  22 C.F.R. § 41.122(e)(2).  However, P.K. was not and could not have been ordered removed.

51.     As soon as P.K. expressed fear of ███████, Defendant Bock referred him to an asylum officer for a credible fear interview.

52.     CBP officers may not order an individual removed when the individual has been referred to an asylum officer for the credible fear interview.  8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(4); CBP Inspector's Field Manual § 17.15(d).  If the asylum officer makes a positive determination in the credible fear interview no order of removal can be issued and the individual is transferred to removal proceedings before an immigration judge.  8 U.S.C. § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f).

53.     P.K. received a positive credible fear determination from an asylum officer and was referred to an immigration judge for further proceedings, such that no authority under 22 C.F.R. § 41.122(e)(2) to revoke his visa ever applied.

54.     Federal regulations also authorize a CBP officer to revoke a visa when an individual "requests and is granted permission to withdraw the application for admission." 22 C.F.R. § 41.122(e)(3).

55.     Defendant Bock never granted a request from P.K. to withdraw his application, and instead referred P.K. to an asylum officer for a credible fear interview.  Thus, no authority under 22 C.F.R. § 41.122(e)(3) applied.

56.     Accordingly, Defendant Bock's revocation of P.K.'s F-1 visa was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under the APA.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

a.  Declare that the revocation of Plaintiff's F-1 visa violated the Appointments Clause;

b.  Declare that the revocation of Plaintiff's F-1 visa is invalid and void *ab initio*;

c.  Declare that the revocation of Plaintiff's F-1 visa was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

d.  Hold unlawful and set aside the purported revocation of Plaintiff's visa;

e.  Order Defendants to take appropriate corrective action, including but not limited to, reversing the decision to cancel Plaintiff's F-1 visa;

f.  Award Plaintiff's counsel reasonable attorneys' fees under the Equal Access to Justice Act, and any other applicable statute or regulation; and

g.  Such other and further relief as the Court deems equitable, just, and proper.

Dated: July 8, 2022                         Respectfully submitted,

                                By:   *s/ Nandini Singh*
                                      Nandini Singh (D.C. Bar No. 1047925)
                                      Jillian Feirson (D.C. Bar No. 1743234)
                                      Covington & Burling LLP
                                      850 10th Street NW
                                      Washington, D.C. 20001
                                      Tel: (202) 662-6000
                                      nsingh@cov.com
                                      jfeirson@cov.com

                                      Jeffrey B. Dubner (D.C. Bar No. 1013399)
                                      DEMOCRACY FORWARD FOUNDATION
                                      P.O. Box 34553
                                      Washington, D.C. 20043
                                      Tel: (202) 448-9090
                                      jdubner@democracyforward.org

                                      Mark Fleming (*pro hac* to be filed)
                                      NATIONAL IMMIGRANT JUSTICE CENTER
                                      224 South Michigan Ave., Suite 600
                                      Chicago, Illinois 60604
                                      Tel: (312) 660-1370
                                      Fax: (312) 660-1505
                                      mfleming@hearlandalliance.org

                                      *Counsel for Plaintiff*

13

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 8, 2022, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of the Court on the ECF system and transmitted to counsel registered to receive electronic service.

*s/ Nandini Singh*
Nandini Singh