# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

P.K.,

        Plaintiff,

      v.

U.S. CUSTOMS & BORDER
PROTECTION, *et al.*

        Defendants.

Case No. 1:22-cv-01983-CRC

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................ 2

I.     An Appointed Consular Officer Issued P.K. an F-1 Student Visa and a Consular Letter at the U.S. Embassy in Vienna, Austria. ............................................. 2

II.    An Unappointed Customs and Border Protection Officer Revoked P.K.'s F-1 Student Visa at the Chicago O'Hare Airport. ................................................. 3

III.   Defendant Bock Referred P.K. to An Asylum Officer for a Credible Fear Interview ................................................................................................................... 4

IV.   P.K. Is Unable to Attend University While He Awaits a Decision on His Asylum Claim. ........................................................................................................................ 5

STANDARD OF REVIEW ............................................................................................... 5

SUMMARY OF ARGUMENT ........................................................................................ 5

ARGUMENT ....................................................................................................................... 7

I.     The Revocation of P.K.'s Visa by an Unappointed Employee Violated the Appointments Clause ........................................................................................... 7

      A.    The Appointments Clause Requires Appointment of All Government Officials Exercising Significant Authority in Continuing Positions. .................... 8

      B.    The Power to Revoke a Visa Is a Significant Authority of the United States Properly Exercised Only by Appointed Officers. ...................................... 9

            1.    Adjudicative and Discretionary Decisions, Final and Binding Determinations, and Final Immigration Determinations Are All Significant Authorities of the United States. ............................................. 9

            2.    The Power to Revoke a Visa Is a Significant Authority of the United States. ....................................................................................................... 12

            3.    CBP Officers Hold a Continuing Position Under the Appointments Clause. ................................................................................................... 14

      C.    When Unappointed Defendant Bock Revoked P.K.'s Visa, He Violated the Appointments Clause. ................................................................................... 15

II.    The Revocation of P.K.'s Visa Was Arbitrary and Capricious Because It Was Not
       Authorized by 22 C.F.R. § 41.122(e)...........................................................................17

CONCLUSION ..................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................................5

*Arizona v. United States*,
  567 U.S. 387 (2012) ...............................................................................................12

*Ass'n of Am. R.Rs. v. U.S. Dep't of Transp.*,
  821 F.3d 19 (D.C. Cir. 2016) ...................................................................................8

*Buckley v. Valeo*,
  424 U.S. 1 (1976) (per curiam) ...............................................................6, 8, 9, 11

*Dep't of Homeland Sec. v. Thuraissigiam*,
  140 S. Ct. 1959 (2020) (Sotomayor, J., dissenting) ........................................ 11, 12

*Edmond v. United States*,
  520 U.S. 651 (1997) ............................................................................................6, 8

*Ekiu v. United States*,
  142 U.S. 651 (1892) ...................................................................................10–13, 15

*Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC*,
  140 S. Ct. 1649 (2020) .............................................................................................8

*Freytag v. Comm'r of Internal Revenue*,
  501 U.S. 868 (1991) .......................................................................................6, 8, 10, 11

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*,
  684 F.3d 1332 (D.C. Cir. 2012) .............................................................................16

*Khan v. Holder*,
  608 F.3d 325 (7th Cir. 2010) .................................................................................12

*Landon v. Plasencia*,
  459 U.S. 21 (1982) .................................................................................................12

*Lucia v. SEC*,
  138 S. Ct. 2044 (2018) ....................................................................6, 9–11, 14–17

*Matter of Jong Diing Liu*,
  10 I. & N. Dec. 11 (BIA 1962) .........................................................................13, 16

*Morrison v. Olson*,
    487 U.S. 654 (1988) ................................................................................... 10, 14

*Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA*,
    752 F.3d 999 (D.C. Cir. 2014) ........................................................................ 18

*Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*,
    313 F. Supp. 3d 62 (D.D.C. 2018) ................................................................. 18

*Ryder v. United States*,
    515 U.S. 177 (1995) ........................................................................................ 17

*Scott v. Harris*,
    550 U.S. 372 (2007) .......................................................................................... 5

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020) ................................................................................... 10

*Stewart v. Stackley*,
    251 F. Supp. 3d 138 (D.D.C. 2017) ................................................................ 5

*Tucker v. Comm'r of Internal Revenue*,
    135 T.C. 114 (2010) ..................................................................................... 8, 9

*United States v. Arthrex, Inc.*,
    141 S. Ct. 1970 (2021) ......................................................................11, 12, 16

*\*United States v. Germaine*,
    99 U.S. 508 (1878) ..........................................................................6, 9, 14–16

*United States v. Maurice*,
    26 F. Cas. 1211 (C.C.D. Va. 1823) (Marshall, J.) ......................................... 14

*United States v. Nixon*,
    418 U.S. 683 (1974) ........................................................................................ 18

*U.S. Lines, Inc. v. Fed. Mar. Comm'n*,
    584 F.2d 519 (D.C. Cir. 1978) ........................................................................ 18

**Constitutional Provisions**

\*U.S. Const. art. II, § 2, cl. 2 ....................................................................................8

**Statutes**

\*5 U.S.C. § 706(2)(A) ............................................................................................ 18

6 U.S.C. § 251 ...................................................................................................... 14

6 U.S.C. § 275 ................................................................................................................ 14

6 U.S.C. § 291 ................................................................................................................ 14

6 U.S.C. § 557 ................................................................................................................ 14

8 U.S.C. § 1101(a)(18) ................................................................................................... 15

8 U.S.C. § 1225(b)(1)(A)(i) ........................................................................................... 19

8 U.S.C. § 1229a(a)(1) ..................................................................................................... 5

8 U.S.C. § 1357(a)(1) ..................................................................................................... 12

Homeland Security Act of 2002, Pub. L. No. 107–296, 116 Stat. 2135 (codified at
      6 U.S.C. § 101 *et seq.*) ........................................................................................... 14

**Regulations**

8 C.F.R. § 1.2 ................................................................................................................. 15

8 C.F.R. § 208.30(f) ...................................................................................................... 19

8 C.F.R. § 235.3(b)(4) ................................................................................................... 19

8 C.F.R. § 1003.14 ........................................................................................................... 5

8 C.F.R. § 1240.1 ................................................................................................. 5, 13, 16

*22 C.F.R. § 41.122(e) ............................................................................... 1, 4, 7, 17, 18

*22 C.F.R. § 41.122(e)(2) .................................................................................... 4, 18, 19

*22 C.F.R. § 41.122(e)(3) .................................................................................... 4, 18, 20

22 C.F.R. § 41.122(e)(4) ............................................................................................... 19

**Other Authorities**

*CBP Inspector's Field Manual* § 17.15(d) (2006),
      https://www.aila.org/infonet/cbp-inspectors-field-manual ..................................... 19

Fed. R. Civ. P. 56(a) ....................................................................................................... 5

Memorandum from the Solicitor General, U.S. Dep't of Justice, to Agency Gen.
      Counsels, *Guidance on Administrative Law Judges after Lucia v. SEC (S. Ct.)*
      (July 2018), https://bit.ly/2vAuwGx ........................................................................ 9

*Officers of the United States Within the Meaning of the Appointments Clause*,
   31 U.S. Op. O.L.C. 73, 2007 WL 1405459 (Apr. 16, 2007) ...............................................14

Rebecca Gambler, Director, Homeland Security and Justice, *U.S. Customs &
   Border Protection: Progress and Challenges in Recruiting, Hiring, and
   Retaining Law Enforcement Personnel*, U.S. Government Accountability
   Office, Testimony Before the Subcomm. on Oversight, Management, and
   Accountability, H. Comm. on Homeland Security (Mar. 7, 2019),
   https://www.gao.gov/assets/700/697349.pdf ..............................................................16, 17

## INTRODUCTION

Plaintiff P.K. is an aspiring graduate student in the mental health field.  Having completed his undergraduate studies in Austria, earning a Bachelor's degree in Psychotherapy Science, P.K. was accepted to a Florida-based master's program in mental health counseling in spring 2021.  P.K. soon thereafter received a student visa validly issued on May 11, 2021 by a Consular Officer, who was appointed by the President of the United States and confirmed by the Senate.

Less than a month later, P.K. flew to the United States, arriving at O'Hare International Airport in Chicago on June 5, 2021.  P.K. never made it to his connecting flight to Florida that day.  Instead, he was denied admission to the United States and lost his ability to continue his studies because an unappointed employee of U.S. Customs and Border Protection ("CBP") purported to order a binding, final revocation of P.K.'s student visa, an action that was unlawful for two independent reasons.

*First*, this employee's revocation of P.K.'s student visa violated the Constitution's Appointments Clause because the employee was not appointed by the President or the Secretary of Homeland Security.  The revocation of a visa is an exercise of the sovereign and significant authority of the United States and, therefore, cannot be lawfully exercised by a person acting in a continuing position without constitutional appointment.

*Second*, even if an unappointed CBP employee could constitutionally exercise the sovereign authority to revoke a visa, he could do so only as authorized by regulation.  The Secretary of State has laid out specific, limited situations in which CBP personnel can revoke visas, *see* 22 C.F.R. § 41.122(e), none of which applied in P.K.'s case.  Because P.K. was not ordered removed—indeed, could not have been ordered removed under the Immigration and Nationality Act ("INA"), the INA's implementing regulations, or CBP's own policies—and was

1

not granted permission to withdraw his application for admission, the CBP employee lacked authority to revoke his visa.

In effect, a single federal line employee, acting without authority from the Constitution, from statute, from regulation, or from internal agency procedures, upended P.K.'s life, leaving him unable to matriculate in his educational program as he planned or to make use of the visa that an appointed Officer had issued to him. That employee's unilateral, final decision to revoke P.K.'s student visa violated the Appointments Clause and was arbitrary, capricious, an abuse of discretion, and otherwise contrary to law. Such a decision must be declared void *ab initio* and the visa revocation set aside.

## FACTUAL BACKGROUND

### I.   An Appointed Consular Officer Issued P.K. an F-1 Student Visa and a Consular Letter at the U.S. Embassy in Vienna, Austria.

In spring 2021, P.K., a ▇▇▇▇▇▇▇▇▇▇▇▇ applied for an F-1 visa to pursue a Masters' Degree in Clinical Mental Health Counseling at ▇▇▇▇▇▇▇▇▇▇ in Florida. Plaintiff's Statement of Undisputed Material Facts ("SUMF") ¶¶ 1, 3–4. At the time of his application, P.K. was living in Austria while he completed his Bachelor's Degree program in Psychotherapy Science ▇▇▇▇▇▇▇▇▇▇▇. *Id.* ¶ 2.

On May 11, 2021, an appointed Consular Officer at the U.S. Embassy in Vienna, Austria, issued P.K. the requested F-1 student visa. *Id.* ¶ 5. The visa, affixed to a page of P.K.'s passport, stated that the visa was issued on May 11, 2021 and had an expiration date of May 6, 2023. *Id.* ¶ 6.

Throughout the spring and summer of 2021, there were significant travel restrictions to the United States from the Schengen Area of Europe (which includes Austria) due to the COVID-19 pandemic. *Id.* ¶¶ 8–9. In light of these circumstances, the Consular Officer at the

2

Embassy in Vienna provided P.K. with a letter ("the Consular Letter") that explained that P.K. qualified for a National Interest Exception under Presidential Proclamation 9993. *Id.* ¶ 10. This exception permitted P.K. to travel to the United States despite the travel restrictions. *Id.*

Based on P.K.'s conversation with the Consular Officer as well as his reading of the National Interest Exception Letter, P.K. believed that he was required to enter the United States within 30 days of May 11, 2021—the date that his F-1 visa was issued, the date of its facial validity, and the date the National Interest Exception was granted. *See generally* Declaration of P.K. ("P.K. Decl.") ¶¶ 10–14. Accordingly, P.K. purchased a flight to Chicago O'Hare Airport, with a connecting flight to ▮▮▮▮, Florida. SUMF ¶ 11; P.K. Decl. ¶ 15.

## II. An Unappointed Customs and Border Protection Officer Revoked P.K.'s F-1 Student Visa at the Chicago O'Hare Airport.

On June 5, 2021, P.K. arrived at O'Hare airport in Chicago, Illinois, his first port of entry in the United States before P.K.'s connecting flight to Florida. SUMF ¶¶ 11–12. At O'Hare's immigration inspection, P.K. presented his valid, unexpired F-1 student visa to a CBP officer[1] at the inspections kiosk. *Id.* ¶ 17; Declaration of Ruben Loyo ("Loyo Decl.") ¶ 5. The CBP officer placed him into secondary inspection. SUMF ¶ 17; Loyo Decl. ¶ 6.

A second CBP officer escorted P.K. into a separate room and confiscated P.K.'s passport and birth certificate. SUMF ¶ 18. Defendant Bock, a third CBP officer, who (like the other CBP officers P.K. encountered) was not appointed by either the President or the Secretary of Homeland Security, *id.* ¶¶ 14–16, proceeded to question P.K. for several hours. *Id.* ¶¶ 19–20;

---

[1] While the formal job title for CBP personnel conducting entry inspections is "CBP officer," that does not denote Officer status under the Appointments Clause. To avoid confusion, this Motion will capitalize "Officer" when referring to persons appointed under the Appointments Clause or positions requiring appointment, and not capitalize "officer" when referring to the CBP job title.

Loyo Decl. ¶ 7.  During this questioning, Defendant Bock declined P.K. entry to the United

States.  SUMF ¶ 21.

Around the same time, Defendant Bock also revoked P.K.'s F-1 student visa.  *Id.* ¶ 21.

He did not formally state the purported basis for his actions, but based on the typical practices of

CBP officers at O'Hare Airport, *see* Loyo Decl. ¶¶ 3, 9, his revocation likely asserted one of two

grounds.  First, 22 C.F.R. § 41.122(e)(2) authorizes revocation of a visa if the visa holder "is

ordered . . . removed"; however, as discussed in the next section, P.K. was not ordered removed.

Second, 22 C.F.R. § 41.122(e)(3) authorizes revocation if the visa holder "requests and is

granted permission to withdraw the application for admission"; however, again as discussed in

the next section, P.K. was not granted permission to withdraw his application.   Neither these nor

any other subsection of 22 C.F.R. § 41.122(e) authorized Defendant Bock's decision to revoke

the visa.

## III.    Defendant Bock Referred P.K. to An Asylum Officer for a Credible Fear Interview.

After informing P.K. that he was not eligible to enter the United States, Defendant Bock

asked P.K. if he wished to request withdrawal of his application for admission to the United

States.  SUMF ¶ 22.  P.K. stated that he did wish to withdraw his application, but Defendant

Bock never granted P.K. permission to withdraw his application for admission.  *Id.* ¶ 23.

Defendant Bock also asked P.K. whether he was afraid to return ████.  *Id.* ¶ 24.  P.K.

explained that he was indeed afraid to return ████, because ██████████

█████████.  *Id.* ¶ 25.  Defendant Bock therefore referred P.K. to an asylum officer

for a credible fear interview.  *Id.* ¶ 26.

In the meantime, P.K. was detained at the McHenry County Detention Center, where he

endured ten days of solitary confinement under COVID-19 pandemic quarantine measures.  P.K.

Decl. ¶¶ 26, 28.  On or around June 22, 2021, P.K. received a positive credible fear

determination from an asylum officer and was thereafter released on parole. SUMF ¶ 27; P.K. Decl. ¶ 31.

## IV.  P.K. Is Unable to Attend University While He Awaits a Decision on His Asylum Claim.

P.K. is currently in proceedings before an immigration judge regarding his claim for asylum. SUMF ¶ 28. However, the revocation of P.K.'s F-1 visa is not reviewable in those proceedings. *Id.* ¶ 29; 8 U.S.C. § 1229a(a)(1); 8 C.F.R. §§ 1003.14, 1240.1. Thus, while P.K.'s asylum application is pending—which could take years—P.K. is unable to attend his graduate studies, act as a student counselor in his program's clinic, or otherwise work towards obtaining his Master's Degree in his chosen field. SUMF ¶ 30; P.K. Decl. ¶¶ 33, 35. In short, P.K.'s life and academic plans have been thrown into utter disarray by the unlawful actions of one federal employee. P.K. Decl. ¶¶ 33, 35.

### STANDARD OF REVIEW

"Summary judgment is appropriate when the pleadings and evidence show that 'there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law.'" *Stewart v. Stackley*, 251 F. Supp. 3d 138, 155 (D.D.C. 2017) (quoting Fed. R. Civ. P. 56(a)). A "material" fact is one capable of affecting the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### SUMMARY OF ARGUMENT

The revocation of P.K.'s validly issued F-1 visa is unlawful under two independently significant grounds:

*First*, Defendant Bock's revocation of P.K.'s validly issued F-1 visa violated the Appointments Clause because Defendant Bock is an *unappointed* employee exercising the significant authority of the United States in a continuing position. As the Supreme Court has made clear, any employee of the United States government who "exercis[es] significant authority pursuant to the laws of the United States," *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018) (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976) (per curiam)), and "occup[ies] a 'continuing' position" is an "Officer" under the Appointments Clause and therefore must be properly appointed by the President or Secretary of Homeland Security. *Lucia*, 138 S. Ct. at 2051 (quoting *United States v. Germaine*, 99 U.S. 508, 511 (1878)).

Defendant Bock, in revoking P.K.'s validly issued F-1 visa, exercised a significant authority pursuant to the laws of the United States. The revocation of a visa constitutes a significant authority because it is an adjudicative and quintessentially sovereign authority involving significant discretion by the immigration officer to strip an individual of his right to enter the United States. *See, e.g., Lucia*, 138 S. Ct. at 2053–55; *Edmond v. United States,* 520 U.S. 651, 662 (1997); *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 880–82 (1991). Here, Defendant Bock made legal and factual determinations with neither review nor approval by any appointed Officer, and unilaterally entered an immediate, final, and binding revocation of P.K.'s visa.

Defendant Bock, a Customs and Border Protection employee, occupies a continuing position as a CBP officer, but is not appointed. CBP officers are "continuing" employees of the Department of Homeland Security ("DHS"). Their tenure, duration, emolument, and duties embrace the ideas of "continuing and permanent, not occasional or temporary." *Germaine*, 99 U.S. at 511–12. However, CBP officers are not appointed by the President nor the DHS

Secretary.  SUMF ¶ 14–15; Declaration of James F. Tomsheck ("Tomsheck Decl.") ¶ 6.  Instead, they are hired by CBP's Office of Human Management.  SUMF ¶ 16; Tomsheck Decl. ¶¶ 5–6.

Accordingly, because Defendant Bock is not an appointed "Officer," his exercise of significant authority to revoke P.K.'s visa violated the Appointments Clause and must be declared void *ab initio*, thus restoring to P.K. his F-1 visa.

*Second*, and separately, even if unappointed CBP employees could constitutionally exercise the sovereign authority to revoke visas, Defendant Bock's revocation of P.K.'s validly issued F-1 visa was arbitrary, capricious, an abuse of discretion, and otherwise contrary to his authority under federal regulation.  By regulation, CBP officers are authorized to revoke visas in only a narrow set of circumstances enumerated in 22 C.F.R. § 41.122(e), none of which applied to Defendant Bock's revocation of P.K.'s visa.  Accordingly, Defendant Bock never had the regulatory authority to revoke P.K.'s visa, rendering any such revocation in violation of the Administrative Procedure Act ("APA").

## ARGUMENT

## I.     The Revocation of P.K.'s Visa by an Unappointed Employee Violated the Appointments Clause.

Defendant Bock's June 5, 2021 revocation of P.K.'s student visa violated the Appointments Clause of the United States Constitution.  The Appointments Clause requires the appointment of all government officials who exercise significant authority while occupying continuing positions.  The revocation of a visa constitutes the exercise of significant authority, because it is a quintessentially sovereign and adjudicative authority involving significant discretion.  With neither review nor approval by any appointed Officer, Defendant Bock, a CBP employee who holds a continuing position as an immigration officer, made legal and factual determinations to unilaterally enter an immediate, final, and binding revocation of P.K.'s visa.

Accordingly, Defendant Bock's purported exercise of significant authority in revoking P.K.'s visa violates the Appointments Clause, rendering the revocation a legal nullity.

A.   **The Appointments Clause Requires Appointment of All Government Officials Exercising Significant Authority in Continuing Positions.**

The Appointments Clause of Article II, Section 2, Clause 2 of the United States Constitution provides:

> [The President] . . . shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

The Appointments Clause applies "to all exercises of federal power," *Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC*, 140 S. Ct. 1649, 1657 (2020). Its requirements "[are] among the significant structural safeguards of the constitutional scheme," "designed to preserve political accountability relative to important government assignments." *Edmond*, 520 U.S. at 659, 663.

All "Officer[s] of the United States" must be "appointed in a specific manner, as prescribed in" the Appointments Clause. *Ass'n of Am. R.Rs. v. U.S. Dep't of Transp.*, 821 F.3d 19, 36 (D.C. Cir. 2016) (citing *Buckley*, 424 U.S. at 126). The "default manner of appointment" for both principal and inferior Officers is appointment by the President with the advice and consent of the Senate. *Edmond*, 520 U.S. at 660. Congress may also authorize the President, a Head of a Department, or a court of law to appoint "inferior Officers." When Congress has authorized a Head of a Department to appoint inferior Officers, the final appointment must be made or approved by the Head of the Department personally; this authority cannot be delegated. *See Freytag*, 501 U.S. at 880 ("[T]he [Appointments] Clause forbids Congress to grant the appointment power to inappropriate members of the Executive Branch."); *Tucker v. Comm'r of*

*Internal Revenue*, 135 T.C. 114, 121 (2010), *aff'd*, 676 F.3d 1129 (D.C. Cir. 2012) ("When Congress establishes an 'inferior Officer' in the Executive Branch, it can vest the appointment power for that officer no further from the President than the Head of a Department whom the President himself has appointed."); *see also* Memorandum from the Solicitor General, U.S. Dep't of Justice, to Agency Gen. Counsels, *Guidance on Administrative Law Judges after Lucia v. SEC (S. Ct.)*, at 4 (July 2018), https://bit.ly/2vAuwGx ("[T]he final appointment must be made or approved by the Department Head personally; this authority cannot be delegated.").

A federal government official, regardless of position or title, acts as an "Officer[] of the United States" for purposes of the Appointments Clause if: (1) the individual "exercis[es] significant authority pursuant to the laws of the United States," *Buckley*, 424 U.S. at 126, and (2) the exercise of that authority is "continuing," *Germaine*, 99 U.S. at 511–12; *see also Lucia*, 138 S. Ct. at 2051. An employee in a continuing position thus cannot exercise "significant authority pursuant to the laws of the United States" unless he has been appointed by the President or, with Congress's authorization, by a Head of a Department or a court of law. *Buckley*, 424 U.S. at 126–27.

> **B.** **The Power to Revoke a Visa Is a Significant Authority of the United States Properly Exercised Only by Appointed Officers.**
>
> **1.** **Adjudicative and Discretionary Decisions, Final and Binding Determinations, and Final Immigration Determinations Are All Significant Authorities of the United States.**

Whether an individual exercises significant authority pursuant to the laws of the United States turns on "the extent of power an individual wields in carrying out his assigned functions." *Lucia*, 138 S. Ct. at 2051. While this standard is "framed in general terms," *id.*, the Supreme Court has repeatedly held exercises of authority to be significant where they are: (a) adjudicative and discretionary; (b) final and binding; and/or (c) final immigration determinations. All three

circumstances exist here, and therefore a federal official who revokes a validly issued visa exercises "significant authority" of the United States.

a) **The Power to Make Adjudicative and Discretionary Decisions Is a Significant Authority of the United States.**

The Supreme Court has repeatedly held that adjudicative authority is significant. *See, e.g.*, *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2200 (2020) (director of agency an executive Officer where she "may unilaterally issue final decisions"); *Lucia*, 138 S. Ct. at 2053–54 (holding adjudicative authority to be significant even though reviewable by an Officer). Adjudicative authorities such as "the responsibilities involved in presiding over adversarial hearings," "tak[ing] testimony," "conduct[ing] trials," "rul[ing] on the admissibility of evidence," and "enforcing compliance with discovery orders," are an exercise of significant authority. *Lucia*, 138 S. Ct. at 2052 (citing *Freytag*, 501 U.S. at 881–82); *see also Morrison v. Olson*, 487 U.S. 654, 671–72 (1988) (special counsel with authority to investigate and prosecute crimes was an "officer" despite lack of authority to adjudicate or penalize).

Similarly, the Supreme Court has held that federal officials exercising "'significant discretion' when carrying out 'important functions'" are exercising significant authority reserved for "officers" of the United States. *Lucia*, 138 S. Ct. at 2053; *see also Freytag*, 501 U.S. at 882 ("In the course of carrying out these important functions, the [officials at issue] exercise significant discretion."); *Ekiu v. United States*, 142 U.S. 651, 660 (1892) (Congress may give "discretionary power to an officer").

b) **The Power to Issue a Final and Binding Decision Is a Significant Authority of the United States.**

When evaluating whether a federal official is exercising significant authority of the United States, courts consider whether that exercise of authority is final and binding. *Lucia*, 138 S. Ct. at 2053–54. Although a court may conclude that a federal official is exercising significant

10

authority "even when their decisions [ar]e not final," *id.*, the requirement of appointment becomes even more critical where federal officials issue final determinations that have "last-word capacity" or "independent effect," *id.* at 2054. Indeed, the significance of issuing final and unreviewable decisions is so great that it may require appointment not just as an inferior Officer but a principal Officer. In *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1985 (2021), the Court held that "the unreviewable authority wielded by [administrative patent judges] . . . is incompatible with their appointment by the Secretary to an inferior office." The Court reasoned that "Congress has assigned [administrative patent judges] 'significant authority' in adjudicating the public rights of private parties, while also insulating their decisions from review . . . ." *Id.* at 1986 (citing *Buckley*, 424 U.S. at 126). In assessing whether a federal official is exercising significant authority reserved for properly appointed Officers, courts may consider "how much power [that official] exercises free from control by a superior." *Id.* at 1982–83. "[T]he unchecked exercise of executive power by an officer buried many layers beneath the President poses *more, not less*, of a constitutional problem." *Id.* at 1983 (emphasis added).

<strong><em>c)     The Power to Issue a Final Immigration Determination Is a Significant Authority of the United States.</em></strong>

Dating as far back as the first immigration acts, the Supreme Court has required government agents making final immigration determinations to be appointed as "Officers." *See Ekiu*, 142 U.S. at 660 ("[T]he final determination of those facts [regarding the right to enter the United States] may be in trusted by congress to executive officers . . . ."); *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 2006 (2020) (Sotomayor, J., dissenting) (summarizing *Ekiu* as "considering whether an immigration officer's appointment was unconstitutional such that his actions were invalid"). In *Ekiu*, the Court held that immigration inspectors were "Officers," properly appointed by the Head of a Department, where the immigration inspectors

11

were exercising the significant authority "to inspect and examine [aliens]," "to administer oaths," "to take and consider testimony touching the right of any such aliens to enter the United States," and to make decisions about "the right of any alien to land." 142 U.S. at 662–63. The "power to admit or exclude aliens is a sovereign prerogative," and so it constitutes a significant authority of the United States. *Thuraissigiam*, 140 S. Ct. at 1982 (quoting *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)); *see also Arizona v. United States*, 567 U.S. 387, 394–95 (2012) (the federal government's "inherent power as sovereign" is the source of its "broad, undoubted power over the subject of immigration and the status of aliens").

### 2. The Power to Revoke a Visa Is a Significant Authority of the United States.

Applying the relevant factors considered by the Supreme Court, the power to revoke visas is a significant authority of the United States.

*First*, a CBP officer's revocation of a visa involves adjudicative authority. When a CBP officer revokes a validly issued visa, he functions as the investigating officer, the prosecutor, and final adjudicator simultaneously—a combination of powers even more significant than those found to require appointment in previous Supreme Court cases. *See* cases cited *supra* Section I.B.1.a.

*Second*, a CBP officer exercises enormous discretion in determining whether to revoke a visa. At a port of entry, a CBP officer has the authority to "interrogate any alien or person [he] believes to be an alien." 8 U.S.C. § 1357(a)(1). That brief encounter, the substance of which is entirely within the officer's control and discretion, forms the principal basis for the officer's factual and legal determinations and his decision to revoke a visa. *Cf. Khan v. Holder*, 608 F.3d 325, 327–29 (7th Cir. 2010) (describing CBP officers' discretion to determine that a noncitizen

with an otherwise valid visa intends to violate the terms of the visa and find the person inadmissible).

*Third*, a CBP officer's decision to revoke an individual's visa enjoys both finality and binding, immediate effect. The revocation of a nonimmigrant visa is unreviewable in administrative proceedings. *See* 8 C.F.R. § 1240.1 (specifying Immigration Judge authority in removal proceedings, without including visa revocations); *cf. Matter of Jong Diing Liu*, 10 I. & N. Dec. 11, 12 (BIA 1962) (holding that the Board of Immigration Appeals could review only "whether or not there was a revocation or invalidation of the visa," not whether that revocation was lawful). Thus, a noncitizen has no avenue to appeal or challenge the revocation of his visa within administrative proceedings in the immigration system and must endure the consequences that arise the moment after visa revocation.

*Fourth*, a CBP officer's revocation of a visa is an exercise of significant authority because it is a final immigration determination. In *Ekiu*, immigration inspectors required constitutional appointment to decide "the right of any alien to land" (*i.e.*, enter), even though their determinations were statutorily reviewable by the Superintendent of Immigration and the Secretary of Treasury. 142 U.S. at 662–63. The requirement of appointment is plain where, as here, CBP officers decide the right of noncitizens to enter the United States *without* statutory review by an appointed Officer.

Accordingly, the power to revoke a validly issued visa constitutes an exercise of a significant authority of the United States that may only be entrusted "by congress to executive officers." *Id.* at 660.

### 3. CBP Officers Hold a Continuing Position Under the Appointments Clause.

CBP officers hold a "'continuing' position established by law." *Lucia*, 138 S. Ct. at 2051. The concept of a "continuing position" in Appointments Clause jurisprudence "embraces the ideas of tenure, duration, emolument, and duties." *Germaine*, 99 U.S. at 511–12. Employment in such a position is "continuing and permanent, not occasional or temporary." *Id*.

A "continuing position" does not include employment "essentially to accomplish a single task," nor does it refer to "[an] office [that] is terminated" when a specific task is completed. *Morrison*, 487 U.S. at 672. Rather, a continuing position under the Appointments Clause is an open-ended position whose "duties continue, though the person be changed." *United States v. Maurice*, 26 F. Cas. 1211, 1214 (C.C.D. Va. 1823) (Marshall, J.); *see also Officers of the United States Within the Meaning of the Appointments Clause*, 31 U.S. Op. O.L.C. 73, 2007 WL 1405459, at *22 (Apr. 16, 2007) (position is continuing where duties are "not contingent on a particular person's holding it").

Defendant Bock, a CBP employee, occupies a continuing position as an immigration officer. The position of "immigration officer"[2] is statutorily defined as "any employee or class of employees of the Service or of the United States designated by the Attorney General,[3] individually or by regulation, to perform the functions of an immigration officer specified by this

---

[2] Despite the name, immigration "officers" are not appointed as Officers pursuant to the Appointments Clause.

[3] Since the INA was enacted and most recently amended, Congress created DHS and transferred most of the authorities discussed herein to it. *See generally* Homeland Security Act of 2002, Pub. L. No. 107–296, 116 Stat. 2135 (codified at 6 U.S.C. § 101 *et seq.*); *see, e.g.*, 6 U.S.C. §§ 251, 275, 291, 557. All relevant references in the INA to "Attorney General" now refer to the Secretary of Homeland Security, and all relevant references to the INS now refer to CBP, Immigration and Customs Enforcement ("ICE"), and/or United States Citizenship and Immigration Services ("USCIS").

chapter or any section of this title."  8 U.S.C. § 1101(a)(18).  All CBP officers have been designated as immigration officers on a class-wide basis.  8 C.F.R. § 1.2.

CBP officers hold continuing positions because they are not hired merely to complete a specific task and then terminated when that task is complete.  Instead, they are hired to serve in an open-ended role, where the duties of the position continue even if a specific officer leaves DHS employment.  Furthermore, CBP officers receive a fixed salary in exchange for ongoing performance of duties, rather than receiving piecework pay contingent on performance of occasional duties.  CBP officers' "tenure, duration, emolument, and duties" thus reflect the notions of "continuing and permanent, not occasional or temporary."  *Germaine*, 99 U.S. at 511–12.

### C.    When Unappointed Defendant Bock Revoked P.K.'s Visa, He Violated the Appointments Clause.

Defendant Bock's revocation of P.K.'s visa on June 5, 2021 at Chicago O'Hare Airport violated the Appointments Clause.

*First*, Defendant Bock purported to exercise the significant authority of the United States. By revoking PK's visa, Defendant Bock made an adjudicative, discretionary, and final decision that immediately stripped P.K. of his valid F-1 visa, a devastating harm to P.K.  *See Lucia*, 138 S. Ct. at 2052–54; *Ekiu*, 142 U.S. at 660.  Defendant Bock's actions were adjudicative because he took testimony from P.K. about his reasons for entering the United States, evaluated P.K.'s visa and related admission documents, and used P.K.'s testimony and documents to make the final, binding decision to revoke P.K.'s visa.  *See* SUMF ¶ 20–21; Ex. 5, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act.  Defendant Bock exercised enormous discretion in that he independently made the decision to revoke P.K.'s visa.  As "an officer buried many layers beneath the President," Defendant Bock's "unchecked exercise of

15

executive power . . . pose[d] more, not less, of a constitutional problem." *Arthrex, Inc.*, 141 S. Ct. at 1983. Defendant Bock's decision to revoke P.K.'s visa also has "last-word capacity," *Lucia*, 138 S. Ct. at 2054, because P.K. has no avenue to appeal the visa revocation in immigration administrative proceedings.[4] *See* 8 C.F.R. § 1240.1; *cf. Matter of Jong Diing Liu*, 10 I. & N. Dec. at 12. Indeed, the decision has significant consequences, as it thwarted—and continues to thwart—P.K. from pursuing the academic and professional objectives that motivated the original issuance of his student visa by a constitutionally appointed principal Officer.

*Second*, as shown above, Defendant Bock holds a continuing position for purposes of the Appointments Clause, but has not been appointed. As a CBP officer, Bock holds a continuing position with the federal government, given that the tenure, duration, duties, and compensation of his post reflect the ideas of continuation and permanence. *See Germaine*, 99 U.S. at 511–12.

*Third*, Defendant Bock has not been appointed pursuant to the Appointments Clause. Despite the continuing nature of his post, Defendant Bock never received an appointment from the President, the Secretary of Homeland Security, or other Department Head. *See* SUMF ¶¶ 14–16. Instead he was hired by CBP's Office of Human Resources Management ("HRM"). *See id.* ¶ 16; *see also* Tomsheck Decl. ¶¶ 5–10; Rebecca Gambler, Director,

---

[4] The final, unreviewable nature of many of the determinations underlying a visa revocation makes the power to issue that order a power that can properly be exercised only by a *principal* Officer, not an *inferior* Officer. *See, e.g.*, *Arthrex, Inc.*, 141 S. Ct. at 1985 (holding that Administrative Patent Judges' "unreviewable authority" in patent review proceedings "is incompatible with their appointment by the Secretary to an inferior office."); *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1340 (D.C. Cir. 2012) (Copyright Royalty Judges were principal Officers because their determinations were not "reversible or correctable by any other officer or entity within the executive branch," even though their procedural rules and legal determinations were reviewable by a principal Officer). Notably, the U.S. Consular Officers that issue visas are *principal* Officers. However, because Defendant Bock was not appointed at all, the Court need not determine whether his revocation of P.K.'s visa required appointment as a principal Officer or merely as an inferior Officer.

Homeland Security and Justice, *U.S. Customs & Border Protection: Progress and Challenges in Recruiting, Hiring, and Retaining Law Enforcement Personnel*, U.S. Government Accountability Office, Testimony Before the Subcomm. on Oversight, Management, and Accountability, H. Comm. on Homeland Security, at 4 (Mar. 7, 2019), https://www.gao.gov/assets/700/697349.pdf ("Gambler Test.") (outlining CBP's "Hiring Process for Border Patrol Agent and CBP Officer Positions"). No approval or other participation by the Secretary of Homeland Security is required, nor is it typically involved. *See* SUMF ¶¶ 14–16; Tomsheck Decl. ¶ 6; Gambler Test., at 4.

In sum, Defendant Bock exercised significant authority of the United States while in a continuing position, yet was not appointed pursuant to the Appointments Clause. The absence of a federal appointment renders the action that Defendant Bock took under the purported authority of the United States a violation of the Appointments Clause and thus a legal nullity. *See Ryder v. United States*, 515 U.S. 177, 179 (1995) (holding that actions by officials who "had not been appointed in accordance with the dictates of the Appointments Clause" are "not valid *de facto*"); *Lucia*, 138 S. Ct. at 2055. Accordingly, the revocation of P.K.'s visa by Defendant Bock, an unappointed CBP employee, is void *ab initio* and should be set aside.

## II.     The Revocation of P.K.'s Visa Was Arbitrary and Capricious Because It Was Not Authorized by 22 C.F.R. § 41.122(e).

Separately, even if an unappointed employee could constitutionally exercise the authority to revoke a validly issued student visa, Defendant Bock's revocation of P.K.'s validly issued F-1 visa was arbitrary, capricious, an abuse of discretion, and otherwise contrary to his authority under federal regulation. An immigration officer is only authorized to revoke a valid visa in a limited set of circumstances outlined in 22 C.F.R. § 41.122(e), and none of those circumstances applied to P.K.'s case. Because Defendant Bock never had regulatory authority to revoke P.K.'s

visa, the Court should find P.K.'s visa revocation arbitrary, capricious, and unlawful under the

Administrative Procedure Act ("APA") and should therefore set it aside, restoring P.K.'s visa.

The APA provides that a "reviewing court shall—hold unlawful and set aside agency

action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). As this Court has explained, "[i]t

is [] clear beyond cavil that an agency acts arbitrarily and capriciously if it acts in a manner that

is contrary to its own regulations . . . ." *Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum.*

*Servs.*, 313 F. Supp. 3d 62, 72 (D.D.C. 2018) (citing *Nat'l Env't Dev. Ass'n's Clean Air Project*

*v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014); *United States v. Nixon*, 418 U.S. 683, 695–96

(1974)). "[W]hile an administrative agency can certainly 'amend or repeal its own regulations,'

it is not free to 'ignore or violate its regulations while they remain in effect.'" *Pol'y & Rsch.*,

313 F. Supp. 3d. at 72–73 (quoting *U.S. Lines, Inc. v. Fed. Mar. Comm'n*, 584 F.2d 519, 526

n.20 (D.C. Cir. 1978)).

Pursuant to 22 C.F.R. § 41.122(e), an immigration officer is authorized to revoke a

validly issued visa only in nine specific and limited circumstances, none of which authorized

Defendant Bock to revoke P.K.'s visa. While P.K. is not certain which ground Defendant Bock

purported to rely on because CBP seized P.K.'s passport—which contained P.K.'s visa—and

DHS has declined to return it, P.K. Decl. ¶¶ 17, 33, similar revocations at O'Hare Airport have

purportedly been based on subsections 41.122(e)(2) or (e)(3). *See* Loyo Decl. ¶ 9.[5] Both of

---

[5] Although DHS has not yet disclosed the specific basis Defendant Bock asserted for revoking
the visa, summary judgment is appropriate at this time because it is clear that none of the
possible bases under 22 C.F.R. 41.122(e) could apply. To the extent DHS asserts that it had a
different basis than the ones discussed above, P.K. reserves the right to address that argument.

those subsections have preconditions that do not apply here, and none of the other remaining

sections are plausibly relevant to P.K.'s circumstance.[6]

Section 41.122(e)(2) authorizes revocation of a visa only after the visa holder is

"ordered . . . removed from the United States pursuant to INA 235 [8 U.S.C. § 1225]."  P.K. was

not and could not have been ordered removed pursuant to 8 U.S.C. § 1225.  Once P.K. expressed

a fear of persecution and was referred for a credible fear interview before an asylum officer,

SUMF ¶¶ 24–26, the statute and regulations prohibited Defendant Bock from ordering him

removed, as did DHS policy.  *See* 8 U.S.C. § 1225(b)(1)(A)(i) (authorizing immigration officers

to order removal "*unless* the alien indicates . . . a fear of persecution") (emphasis added);

8 C.F.R. § 235.3(b)(4) ("If an alien subject to the expedited removal

provisions . . . expresses . . . a fear of return to his or her country, *the inspecting officer shall not

proceed further with removal*") (emphasis added); *CBP Inspector's Field Manual* § 17.15(d)

(2006), https://www.aila.org/infonet/cbp-inspectors-field-manual ("Aliens who indicate an

intention to apply for asylum or a fear of persecution . . . *may not be ordered removed* until an

asylum officer has interviewed the alien to determine whether the alien has a credible fear of

persecution . . . .") (emphasis added); Loyo Decl. ¶ 10.  Defendant Bock therefore did not order

him removed.  And, because P.K. passed his credible fear interview, the asylum officer referred

him for further proceedings before an Immigration Judge rather than ordering him removed.

8 C.F.R. § 208.30(f).  Accordingly, P.K. was never and currently is not "ordered . . . removed

from the United States pursuant to INA 235 [8 U.S.C. § 1225]."  22 C.F.R. § 41.122(e)(2).

---

[6] Section 41.122(e)(4), which authorizes visa revocation pursuant to a "final order of deportation or removal or a final order granting voluntary departure," also does not apply because P.K.'s removal proceedings before an Immigration Judge are ongoing and have not resulted in a final order.

Similarly, P.K. was never "granted permission to withdraw the application for admission," and therefore section 41.122(e)(3) did not authorize revocation. Although P.K. requested the opportunity to withdraw his application, SUMF ¶¶ 22–23, Defendant Bock could not and did not grant him permission to do so, instead referring him to an asylum officer. *Id*. ¶ 26; Loyo Decl. ¶¶ 9–10.

Accordingly, because Defendant Bock's revocation was not authorized by any of the circumstances in which section 41.122(e) authorizes visa revocation, his revocation of P.K.'s validly issued F-1 visa was arbitrary, capricious, an abuse of discretion, and otherwise contrary to his authority under federal regulation. The revocation of P.K.'s student visa should accordingly be set aside.

## CONCLUSION

For the foregoing reasons, P.K. respectfully requests that the Court grant Plaintiff's motion for summary judgment and find that Defendant Bock's revocation of P.K.'s F-1 visa violated the Appointments Clause and thus was invalid and void *ab initio*. P.K. further requests that the Court find that Defendant Bock's revocation of P.K.'s F-1 visa was arbitrary, capricious, an abuse of discretion, and otherwise contrary to law and hold that the revocation must be set aside.